IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| AARON ALVIN ALLEN, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )    **CIVIL ACTION NO. 1:11-00609** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       **Defendant.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order filed September 9, 2011, to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Presently pending before the Court are the parties cross-Motions for Judgment on the Pleadings. (Document Nos. 7 and 14.)

The Plaintiff, Aaron Alvin Allen (hereinafter referred to as "Claimant"), filed an application for DIB on February 13, 2008 (protective filing date), alleging disability as of August 1, 1998, due to "tuberous sclerosis with brain tumor, anxiety, PTSD, anger, memory problems, [and] disc disease." (Tr. at 16, 135-36, 158, 162.) The claim was denied initially and upon reconsideration. (Tr. at 86-90, 94-96.) On September 11, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 97-98.) A hearing was held on April 7, 2010, before the Honorable Karen B. Peters. (Tr. at 36-83.) On May 5, 2010, the ALJ issued a decision denying Claimant's

claim for benefits. (Tr. at 16-31.) The ALJ's decision became the final decision of the Commissioner on July 14, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On September 9, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity,

considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

>       the Listings of Impairments.
>               (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, August 1, 1998. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffered from tuberous sclerosis, anxiety, degenerative joint disease, low back pain, hypercholesterolemia, epididymitis, the combination of which were severe impairments. (Tr. at 22.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 22.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [B]eginning August 1, 1998, through at least the date last insured of December 31, 2003, the [C]laimant retained the residual functional capacity to lift up to 20 pounds at a time, and the ability to lift and carry up to 10 pounds frequently. He was able to perform walking and standing up to six hours during an eight hour workday, and sitting up to six hours, but would have been required to alternate sitting and standing about every one hour which could have been accomplished by changing positions while remaining in place, without leaving a work station. He could occasionally climb ramps and stairs, but not ladders, ropes, or scaffolding. He could occasionally balance, stoop, kneel, crouch, and crawl. He needed to avoid overhead lifting and any overhead pushing and pulling, but was not otherwise exertionally limited. He was precluded from any job that required working with the general public, but was

not otherwise mentally limited.

(Tr. at 27-28.) At step four, the ALJ found that Claimant could return to his past relevant work as a munitions handler, stocker, safety inspector, and telephone salesman. (Tr. at 28-29.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a parts polisher, parts inspector, and hand packer, at the light level of exertion. (Tr. at 29.) On this basis, benefits were denied. (Tr. at 29-30.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on November 4, 1956, and was 48 years old at the time of the administrative hearing, April 7, 2010. (Tr. at 18, 42, 135.) Claimant had a high school education and was able to communicate in English. (Tr. at 18, 161, 168.) In the past, he worked as a munitions

handler, stocker, safety inspector, and telephone salesman. (Tr. at 28, 79, 163-64, 170-73.)

The Medical Record.

The Court has reviewed all the evidence of record, including the medical evidence, and will summarize it below as it relates to Claimant's claims.

Claimant's Challenges to the Commissioner's Decision and Defendant's Responses.

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to re-contact Dr. Roach, Claimant's treating physician, as required by 20 C.F.R. § 404.1512(e). (Document No. 7 at 2-4.) Claimant notes that the ALJ gave little weight to Dr. Roach's opinion because he failed to state the bases for his conclusions and failed to identify the objective evidence upon which he relied in formulating his opinion. (Id. at 2.) Citing the Regulations and SSR 96-5p, Claimant asserts that the ALJ was required to re-contact Dr. Roach for clarification of his opinion because the ALJ had determined it was not supported by the evidence. (Id. at 3.) Claimant further asserts that the ALJ was required to re-contact Dr. Roach because the treating source was the best and most reliable source as to whether his impairments met the listing requirements. (Id.) In considering Dr. Roach's opinion, Claimant maintains that the ALJ failed to consider all the factors set forth in 20 C.F.R. §404.1527(d). (Id. at 3-4.) Specifically, Claimant asserts that the ALJ failed to acknowledge that Dr. Roach was a specialist in the field of neurology and was well versed in the signs and symptoms of TSC. (Id. at 4.)

In response, the Commissioner asserts that pursuant to 20 C.F.R. § 404.1512(e), the ALJ was not required to re-contact a treating source unless she determined that the record before her was insufficient to make a decision. (Document No. 14 at 24.) The Commissioner contends that the ALJ did not find that Dr. Roach's opinions were unclear. (Id. at 24.) Rather, the ALJ determined that Dr.

Roach's opinions were unsupported by the evidence prior to Claimant's date last insured, December 31, 2003. (Id. at 24-25.) The Commissioner further asserts that though Dr. Roach was Claimant's treating physician after his date last insured, he was not prior thereto. (Id. at 25.) Rather, Drs. Peters and Dr. Kandt, a neurological specialist, were his treating physicians. (Id.) Furthermore, when Dr. Roach examined Claimant nearly two years after his date last insured, he did not make any positive neurological findings or find evidence of anger or frustration. (Id.) Likewise, he found normal strength, gait, and coordination, and noted that Claimant's problems were understandable due to the stress associated with caring for his youngest child. (Id.) Accordingly, the Commissioner asserts that the ALJ was not required to re-contact Dr. Roach and that the ALJ properly evaluated the opinion evidence in accordance with the regulations. (Id.)

Claimant further asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to comply with SSR 96-8p in assessing Claimant's RFC. (Document No. 7 at 4-6.) Regarding Claimant's mental impairments, he asserts that the ALJ limited him only to avoid working with the general public to accommodate his anxiety. (Id. at 5.) He asserts that the ALJ failed to acknowledge that his TSC caused headaches, memory problems, sleep disturbance, and difficulty concentrating. (Id.) Furthermore, the ALJ failed to acknowledge that the main component of panic attacks is the loss of concentration. (Id.) Thus, Claimant contends that the ALJ erred in finding his panic attacks limit him socially but not as to his ability to concentrate. (Id.) Regarding Claimant's physical impairments, he asserts that the ALJ erred in assuming that his back impairment was not connected to his military service. (Id. at 5-6.) Thus, Claimant contends that the ALJ erred in assessing his RFC. (Id.)

In response, the Commissioner asserts that the ALJ's RFC assessment is supported by

substantial evidence of record. (Document No. 14 at 25-27.) Though Claimant asserts error in the ALJ's failure to assess limitations stemming from his anxiety, the Commissioner asserts that Claimant failed to demonstrate limitations in concentration or in other aspects prior to his date last insured. (Id. at 26.) Regarding Claimant's back pain, the Commissioner asserts that the medical evidence showed that after Claimant's date last insured, he had only minimal to moderate degenerative changes and essentially negative exams. (Id. at 26-27.) The Commissioner further asserts that Claimant's activities in caring for his disabled son served as further evidence that he did not have significant limitations due to his back. (Id. at 27.) The Commissioner therefore, asserts that the ALJ accommodated Claimant's impairments in limiting him to light exertional work with occasional postural activities and additional restrictions through his date last insured. (Id.)

Analysis.

1. Duty to Contact Treating Physician.

Claimant first asserts that the ALJ had an obligation to re-contact Dr. Roach because she found that Dr. Roach failed to state the bases for his conclusions and failed to identify the objective evidence upon which he relied in reaching his opinion. (Document No. 7 at 2-4.) Title 20, C.F.R. § 404.1512(e) requires the Social Security Administration ("SSA") to re-contact a medical source to obtain additional evidence or to seek clarification of evidence when the evidence received from that source "is inadequate for us to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e) (2006).[2] Specifically, additional evidence or clarification must be sought from the medical source

---

[2] Title 20, C.F.R. § 404.1512(e) provides:

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

"when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Id. Such additional evidence or clarification may be obtained by the SSA requesting copies of the medical sources' records, obtaining a new or more detailed report from the medical source, or contacting the medical source by telephone. Id. Social Security Ruling 96-5p recapitulates the requirements of § 404.1512(e), and directs the ALJ to "make every reasonable effort to recontact [medical] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear[.]"

The ALJ did not find any conflicts or ambiguities within Dr. Roach's opinion. Rather, on the basis of the evidence of record as a whole, the ALJ concluded that the opinions expressed by Dr. Roach were inconsistent with Claimant's condition prior to his date last insured, December 31, 2003. (Tr. at 28.) The ALJ further determined that Dr. Roach failed to state the basis upon which he arrived at the conclusions that Claimant should lift no more than 75 pounds and that he was suited for

---

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily availalbe. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e) (2010).

sedentary administrative work without deadlines or stress. (Id.) The ALJ noted that Dr. Roach failed to identify the clinical and objective evidence upon which he relied in reaching his opinion. (Id.) The ALJ did not find that additional evidence was needed from Dr. Roach, but that Dr. Roach's opinion was unsubstantiated by the record. Accordingly, the undersigned finds that the ALJ's duty to contact Dr. Roach, whether directly or through counsel, was not triggered. See Jackson v. Barnhart, 368 F.Supp.2d 504, 507-08 (D. S.C. 2005) (finding that the ALJ had no duty to recontact a medical source under 20 C.F.R. § 404.1512(e)(1) when that source's "ultimate conclusion regarding disability was wholly inconsistent with both the objective evidence contained in his treatment records and the records of the other physicians who examined [the claimant]."). To the extent that Dr. Roach's opinion of disability was inconsistent or ambiguous, neither § 404.1512(e) nor SSR 96-5p obligated the ALJ to recontact Dr. Roach. See Jarrells v. Barnhart, 2005 WL 1000255, *6 (W.D. Va. Apr. 26, 2005) (holding that the "Commissioner is not required to give treating medical sources a second opportunity to backfill an unsubstantiated disability opinion simply because the ALJ finds it to be unsupported. To do so, in effect, would be tantamount to shifting the burden to the Commissioner to prove non-disability."). Accordingly, the undersigned finds that the evidence before the ALJ was sufficient, and therefore, he was not required to re-contact Dr. Roach. The undersigned further finds that the ALJ properly considered Dr. Roach's opinion pursuant to 20 C.F.R. § 404.1527(d).

2. RFC Assessment.

Claimant also alleges that the ALJ erred in assessing his RFC by failing to acknowledge limitations from his anxiety disorder and back disorder. (Document No. 7 at 5-6.) At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996).

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2010). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Regarding Claimant's anxiety, the ALJ precluded him from working with the general public. (Tr. at 28.) The ALJ did not assess any further mental-related limitation. Claimant asserts that his TSC often causes benign brain tumors that may cause headaches, memory problems, sleep disturbance, and difficulty concentrating. (Document No. 7 at 5.) He also asserts that he was granted by the Department of Veterans Affairs ("VA") a 100% service connected disability for his TSC, including headaches, fatigue, sleep disturbances, memory issues, depression, anxiety, and difficulty concentrating. (Id.) Claimant attached to his brief a copy of the VA order, which was effective August 1, 2005. (Document No. 7, Exhibit 1.) The Commissioner responds that Claimant ignores his date last insured and asserts that he did not have concentration problems until after December 31, 2003. (Document No. 14 at 26.)

The evidence reveals that Claimant retired from the military effective August 1, 1994. (Tr. at 46.) After his retirement, his third son was born February 28, 1997, who was severely autistic and

disabled. (Tr. at 45.) One of the conditions from which his youngest son suffered was Tuberous sclerosis complex ("TSC"), a genetic disorder that causes tumors to form in many different organs throughout the body. See http://www.tsalliance.org. Claimant was the primary daytime care provider for his youngest son, and his wife assisted him in the evenings. (Tr. at 45.) Claimant was diagnosed with TSC in May 2003. (Tr. at 693-94.) Prior to his date last insured, December 31, 2003, and beginning on July 11, 2002, Claimant had experienced some anxiety and panic attacks, as was diagnosed by his treating physician, Dr. Jana Peters, D.O. (Tr. at 18-20, 231-57.) His anxiety was treated with Wellbutrin, then Xanax, and finally Paxil. (Id.) Symptoms of his anxiety included difficulty sleeping, feelings of anxiousness, difficulty taking deep breaths, and periods of feelings of excitement and emptiness. (Tr. at 18-20, 249.) On May 12, 2003, Claimant was diagnosed by Dr. Kandt with TSC and back pain. (Tr. at 693-94.) On exam, Dr. Kandt noted that Claimant's memory, attention span, concentration, and fund of knowledge were normal. (Tr. at 19, 694.) Claimant stated that he had never experienced any seizures or cognitive dysfunction. (Tr. at 19, 694.) Dr. Kandt advised Claimant that due to his age, he was no longer at "significant risk for cognitive dysfunction, seizures, or giant cell astrocytoma of the brain." (Id.) On June 12, 2003, Claimant was examined by Dr. Peters who diagnosed TSC per Dr. Kandt and generalized depression. (Tr. at 20, 241.)

Following Claimant's date last insured, he presented to Dr. Peters on January 12, 2004, and reported that his anxiety had returned. (Tr. at 20, 241.) She prescribed Klonopin. (Id.) Dr. Roach examined Claimant on January 9, 2005, at which time he reported headaches, sleep disturbance, and stress with anger and frustration. (Tr. at 20-21, 512.) Claimant and Dr. Roach attributed the stress and anger to the challenge of dealing with his youngest son. (Id.) The record does not contain much, if any, reference to problems concentrating until August 2006, when at the VA. (Tr. at 20-21, 198-

201.) His psychiatric exam on July 20, 2006, at the VA however, was normal for concentration, memory, and judgment. (Tr. at 20-21, 557.) In 2007, Claimant began experiencing increased panic attacks and problems with post traumatic stress disorder ("PTSD"). (Tr. at 20-21, 258, 368.)

In view of the foregoing, the undersigned finds that the ALJ properly assessed Claimant's mental RFC. Though Claimant may have experienced difficulties in concentration, it appears that those difficulties post-dated his date last insured of December 31, 2003. The ALJ precluded Claimant from jobs that required him to work with the general public, to accommodate his anxiety. The VA decision did not date back to the time prior to Claimant's date last insured and the fact of the decision did not require the Social Security Administration, an entity separate from the VA, to reach the same conclusions. The undersigned finds that no further limitations resulting from his mental impairments were warranted prior to his date last insured.

Respecting Claimant's back pain, the undersigned too, finds that the ALJ's RFC assessment is supported by the substantial evidence of record. The evidence reveals that Claimant complained of low back pain on May 12, 2003, to Dr. Kandt, but essentially had a normal physical exam. (Tr. at 20-21, 693.) When examined by Dr. Roach on January 12, 2005, his physical exam again essentially was normal and benign for any significant deficiencies related to his back. (Tr. at 20-21, 512-13.) It was not until July 10, 2007, that x-rays revealed mild degenerative changes at the sacroiliac joints bilaterally and moderate degenerative changes of the apophyseal joints between L5 and S1. (Tr. at 20, 585-86.) On February 3, 2009, x-rays of Claimant's lumbosacral spine revealed disc space narrowing at L3-L4, L4-L5, L5-S1, and osteophyte formation. (Tr. at 20, 583.) Nevertheless, findings on exams essentially remained insignificant. As the Commissioner points out, the evidence reveals that Claimant cared for his disabled son prior to his date last insured, which

consisted of him lifting his son. The record does not reflect any difficulties in doing these acts for his son prior to Claimant's date last insured. Accordingly, the undersigned finds that the ALJ's RFC assessment reflects the impairments and limitations prior to Claimant's date last insured, December 31, 2003, and is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 7.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior District

Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: February 28, 2013.

R. Clarke VanDervort
United States Magistrate Judge